UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
                                                                :
**LEONARD GENDELBERG**,                                         :
                                                                :
                Plaintiff,    : **MEMORANDUM DECISION**
                                                                : **AND ORDER**
       – against –                        :
                                                                : 19-CV-2017 (AMD) (RLM)
                                                                :
**HUNTER WARFIELD**,                                            :
                                                                :
                Defendant.    :
                                                                :
--------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

On April 8, 2019, the plaintiff brought this action against Hunter Warfield, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). The alleged violations arise from the defendant's efforts to collect a debt that the plaintiff claims he neither incurred nor owed. Before the Court are the defendant's motion for summary judgment and the plaintiff's cross-motion. For the following reasons, the defendant's motion is granted in part and denied in part, and the plaintiff's motion is denied.

## BACKGROUND[1]

The parties dispute a foundational fact: whether the plaintiff purchased an air conditioner that gave rise to debt that the defendant sought to collect. (*See* ECF No. 29-2, Defendant's 56.1

---

[1] In deciding whether summary judgment is appropriate, the Court resolves all ambiguities and draws all reasonable inferences in favor of the non-moving party. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008). On a motion for summary judgment, the Court's consideration is limited to factual material that would be admissible evidence at trial. *Local Unions 20 v. United Bhd. of Carpenters and Joiners of Am.*, 223 F. Supp. 2d 491, 496 (S.D.N.Y. 2002). Factual allegations that are disputed without a citation to admissible evidence are deemed admitted, as long as they are also supported by the record. Local Civ. R. 56.1(c); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). Factual allegations that are not disputed are also deemed admitted, as long as they are supported by the record. *Giannullo*, 322 F.3d at 140. I disregard any arguments in the Rule 56.1 statements. *Pape v. Dircksen & Talleyrand Inc.*, No. 16-CV-5377, 2019 WL 1435882, at *2 (E.D.N.Y. Feb. 1, 2019), *report and recommendation adopted*, 2019 WL 1441125 (E.D.N.Y. Mar. 31, 2019).

Statement ("Def. 56.1") ¶ 1; ECF No. 32-1, Plaintiff's 56.1 Statement ("Pl. 56.1") ¶ 1.) According to the defendant's records, the plaintiff purchased an air conditioner on March 25, 2016 through the Home Shopping Network.  (Def. 56.1 ¶ 1; ECF No. 29-5, Affidavit of Rich Stoltenborg ("Stoltenborg Aff.") ¶¶ 4-6; ECF No. 29-6 (consumer fact sheet); ECF No. 29-7 (a Statement of Account for Leonard Gendelberg dated April 20, 2018 lists a balance of $159.98 for an "ENERGY STAR 15,100 BTU 115-VOL" with a charge date of March 25, 2016, and lists HSNi, LLC as the creditor); ECF No. 29-12 (account information sheet); ECF No. 29-13 (customer history document lists purchases made from Home Shopping Network in the past ten years, including the ENERGY STAR 15,100 BTU 115-VOL with an order date of March 23, 2016).)  The air conditioner was shipped to the address of Maxim Maximov, LLP, the law firm at which the plaintiff previously worked.  (ECF No. 29-12 (account information sheet lists the address of Maxim Maximov, LLP as the shipping address); *see also* Pl. 56.1 ¶ 3 (the plaintiff worked at Maxim Maximov, LLP, a consumer law and bankruptcy firm).)  According to the records, the plaintiff made two of three installment payments for the unit.  (ECF No. 29-12.)

At his deposition, the plaintiff stated that he has had a Home Shopping Network credit card "for a number of years" and has used it to make purchases from the Home Shopping Network.  (ECF No. 29-4, Gendelberg Deposition Transcript ("Gendelberg Dep.") 76:5-18, 78:24-79:4.)  He said, "I'm sure I've made purchases, but at this point I can't recall what purchases they were."  (Gendelberg Dep. 76:5-11.)  He could not recall when he received the credit card, the last time he used it, approximately how many times he used it, or if he ever disputed a charge made with it.  (Gendelberg Dep. 78:3-14.)  He could not "recall" if he had "ever purchase[d] an air conditioning unit from the Home Shopping Network."  (Gendelberg Dep. 79:12-14.)  In a declaration filed after his deposition, however, the plaintiff stated that he

2

did not purchase the air conditioner. (ECF No. 32-2, Declaration of Leonard Gendelberg ("Gendelberg Decl.") ¶ 3.)

In September of 2016, the defendant sent a debt collection letter to the plaintiff, advising him that he owed a debt to "HSN-FLEXPAY DEPT" in the amount of $159.98, which had been referred to the defendant for collection. (Pl. 56.1 ¶ 5; ECF No. 29-8; *see also* ECF No. 29-6 (consumer fact sheet notes that the defendant was assigned the debtor account in September of 2016).) The plaintiff claimed at his deposition that he did not receive the letter. (Gendelberg Dep. 64:16-21.)

In April of 2018, the defendant and the plaintiff spoke over the telephone several times. (Pl. 56.1 ¶ 6.) The defendant called the plaintiff as part of its efforts to collect the debt, and the plaintiff called the defendant to request verification of the debt. (ECF No. 33-2, Defendant's Response 56.1 Statement ¶¶ 32, 34, 36.) In these calls, the plaintiff denied knowing about the debt, and requested verification. (Pl. 56.1 ¶ 6.)

The defendant sent the plaintiff the following "Payment Reminder," dated April 11, 2018: "The obligation in the amount of $159.98 owed by you to the creditor, the above creditor, remains outstanding. This debt may have been reported, or is scheduled to be reported, to one or more of the national credit reporting agencies: Equifax, TransUnion and/or Experian. If your debt is reported to the credit bureaus, this could adversely affect your credit." (ECF No. 1-1.)

The plaintiff paid the remaining balance of the debt through the defendant's website on April 19, 2018. (Pl. 56.1 ¶ 9.)

The defendant mailed the plaintiff two letters dated April 20, 2018: one to verify the debt, and one to confirm receipt of payment. (*Id.* ¶ 10; ECF Nos. 29-9, 29-10.) The verification letter states: "Enclosed is verification of debt pursuant to 15 U.S.C. § 1692g of the Fair Debt

3

Collection Practices Act. The attached documentation identifies and describes the charges or fees you are obligated to pay. The basis of the obligation is the contract you signed, copy of which is also included." (ECF No. 29-9.) However, the letter did not include any attached documentation or contract. (*See id.*) The payment confirmation letter states: "This letter will confirm that we have received final payment on the above referenced account, and the debt is now satisfied." (ECF No. 29-10.)

After receiving the letters, the plaintiff contacted the defendant on April 20, 2018 to request a copy of the contract referenced in the verification letter. (Pl. 56.1 ¶ 11; ECF No. 29-6 at 9.) The Support Services Department responded, "Hunter Warfield has received the email you have sent and first of all accept our sincere apologize [*sic*] for this misunderstanding. The account we have in our files under your name is for HSN (that now is paid), in HSN there is not any contract that you need to sign to buy a product so, please disregard that verbiage from the letter you received." (ECF No. 29-6 at 9.) On April 23, 2018, the plaintiff requested documentation of the purchase. (*Id.* at 7.) The defendant emailed the plaintiff a "breakdown of charges," and the plaintiff again requested documentation of the purchase. (*Id.* at 6-7.) A representative emailed the plaintiff that they were "waiting for documentation" and would send it when they received it. (*Id.* at 5-6.) Several days later, a representative followed up by email and stated: "Since HSN is unable provide [*sic*] us with a written contract as orders and agreements are usually done either via the phone or the web, we will be refunding your VISA card . . . for the payment." (*Id.* at 5.)

The defendant issued the plaintiff a refund of $159.98, and the plaintiff's account was subsequently closed. (Pl. 56.1 ¶ 15; ECF No. 29-6.)

**LEGAL STANDARD**

Summary judgment is appropriate only if the parties' submissions, including deposition transcripts, affidavits, or other documentation, show that there is "no genuine dispute as to any material fact," and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The movant has the "burden of showing the absence of any genuine dispute as to a material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997).

A fact is "material" when it "might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Barlow v. Male Geneva Police Officer Who Arrested Me on Jan. 2005*, 434 F. App'x 22, 25 (2d Cir. 2011) (summary order) (citations and quotation marks omitted). Once the moving party has met its burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial. *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

**DISCUSSION**

"Congress enacted the FDCPA to protect against the abusive debt collection practices likely to disrupt a debtor's life." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 81 (2d Cir. 2018) (citation and quotations omitted); *see also Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989) ("Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices."). The statute prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of

5

any debt," and "unfair or unconscionable means to collect or attempt to collect debt."  15 U.S.C. §§ 1692e, 1692f.

"In the Second Circuit, 'the question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'"  *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019) (quoting *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008)).  This standard requires "an objective analysis that seeks to protect the naive from abusive practices, while simultaneously shielding debt collectors from liability for bizarre or idiosyncratic interpretations of debt collection letters."  *Greco v. Trauner, Cohen & Thomas, LLP*, 412 F.3d 360, 363 (2d Cir. 2005) (citations and quotation marks omitted).  "[I]n crafting a norm that protects the naive . . . the courts have carefully preserved the concept of reasonableness," and may assume that "even the least sophisticated consumer . . . possess[es] a rudimentary amount of information about the world and a willingness to read a collection notice with some care."  *Id.* (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2d Cir. 1993)) (internal quotation marks omitted).  Thus, the defendant's communication is viewed "from the perspective of a debtor who is uninformed, naive, or trusting, but is making basic, reasonable and logical deductions and inferences."  *Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 132 (E.D.N.Y. 2007) (citation and quotation marks omitted).  A court reviewing a disputed communication does not isolate words or phrases, but considers the letter "in its entirety."  *Schlesinger v. Jzanus Ltd.*, No. 17-CV-3648, 2018 WL 2376302, at *2 (E.D.N.Y. May 24, 2018).

## I. Applicability of the Least Sophisticated Consumer Standard

The defendant argues that the least sophisticated consumer standard does not apply in this case because the plaintiff—who "has a law degree, attempted to become a licensed attorney[,]

6

worked as a paralegal for a law firm that practiced FDCPA litigation" and "had ready access to legal counsel regarding the FDCPA"—"is not the type of consumer that the least sophisticated consumer standard was intended to protect." (ECF No. 29-1 at 5-7; *see* Pl. 56.1 ¶ 3 (the plaintiff worked at Maxim Maximov, LLP, a consumer law and bankruptcy firm); Gendelberg Dep. 41:23-44:8 (the plaintiff said that while he was a paralegal, he participated in "[h]undreds" of FDCPA litigations).) The defendant does not claim that the FDCPA does not apply to the plaintiff at all, and instead urges the Court to interpret the plaintiff's "actions" in light of his particular circumstances. (ECF No. 29-1 at 6-7.)

In *Kropelnicki v. Siegel*, 290 F.3d 118, 127-28 (2d Cir. 2002), the Second Circuit did not reach the issue of whether the FDCPA's protections—and the least sophisticated consumer standard—apply to communications with attorneys, but expressed "grave reservations" about concluding that "alleged misrepresentations to attorneys for putative debtors" could "constitute violations of the FDCPA." It reasoned that "[w]here an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior." *Id.* at 128. Since *Kropelnicki*, courts in this Circuit have declined to apply the FDCPA to communications with attorneys. *See Izmirligil v. Select Portfolio Servicing, Inc.*, No. 18-CV-7043, 2020 WL 1941319, at *10 (E.D.N.Y. Apr. 22, 2020) ("[C]ourts in this circuit have declined to extend the protections of the FDCPA to third parties, such as attorneys, that act as intermediaries between the debt collector and the consumer. . . . Accordingly, the Court will not analyze Plaintiff's FDCPA claims as they pertain to the monthly mortgage statements sent to Plaintiff between May 2017 and May 2018, which apparently were sent to Plaintiff's counsel and not Plaintiff himself.") (collecting cases); *Vernot v. Pinnacle Credit Servs., L.L.C.*, No. 16-CV-3163, 2017 WL 384327,

7

at *5 (E.D.N.Y. Jan. 26, 2017) ("In light of the Second Circuit's 'grave reservations,' the Court concludes the protections of the FDCPA do not apply to communications made by debt collectors to attorneys rather than consumers and, therefore, plaintiff's claim lacks merit because it is based on a communication made to an attorney, not a consumer. In any event, even assuming the FDCPA did apply to such communications and the Court utilized *Evory*'s 'competent lawyer' standard, the Court concludes that defendant's statements would not be materially misleading to a competent lawyer.") (referencing *Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769 (7th Cir. 2007)).

This case does not fall neatly under these precedents because the plaintiff, while apparently a law school graduate, is not a practicing lawyer. The question is whether the attorney exception should extend to someone who has legal training, and was a paralegal at a firm that practices FDCPA litigation, and who is himself the consumer rather than a third party representative.

Some courts have extended the attorney exception to other third parties. *See Sandoval v. I.C. Sys.*, No. 17-CV-3755, 2018 WL 1582218, at *3 (E.D.N.Y. Mar. 29, 2018) ("While [the plaintiff's credit counselor] is not an attorney, given the FDCPA's purpose in establishing certain rights for consumers . . . and the Second Circuit's reluctance to extend the FDCPA's protections to third parties, this Court declines to extend the FDCPA's protections to credit counselors who, like attorneys, act as intermediaries.") (citations, quotation marks and alterations omitted); *Williams v. Harris, Klein Assocs., Inc.*, No. 17-CV-3473, 2018 WL 5268113, at *1 (E.D.N.Y. Oct. 23, 2018) ("[T]he Court has repeatedly expressed doubt that the statute's protections extend to communications made to anyone than the consumer."). There are no third party communications at issue in this case, but the case law nevertheless suggests some hesitancy in

8

applying the FDCPA protections when communications are directed at those with expertise in protecting consumers. Here, the plaintiff has a legal education and did legal work for a firm that specializes in FDCPA litigation, and hardly seems to be the naive consumer that the statute was designed to protect.[2]

On the other hand, the plaintiff is not technically a lawyer, and "the FDCPA enlists the efforts of sophisticated consumers . . . as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008); *Graff v. United Collection Bureau, Inc.*, 132 F. Supp. 3d 470, 480 (E.D.N.Y. 2016). In addition, courts have found that the attorney exception does not necessarily apply, even when the plaintiff has access to legal advice, if the communications were sent directly to the plaintiff. *See Wertzberger v. Shapiro, DiCaro & Barak LLC*, No. 19-CV-4272, 2021 WL 327619, at *8 (E.D.N.Y. Feb. 1, 2021) ("[T]he protections of the FDCPA apply in this case, where Defendant had the summons and complaint from the State-Court Action delivered to Plaintiff rather than to Plaintiff's attorney.") (citing *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 215 (2d Cir. 2017) (rejecting the argument that the FDCPA's protections "are not implicated where the debtor is protected by the procedures of the court system" because the letter at issue made no mention of pending litigation proceedings and was sent to the plaintiff, not the plaintiff's attorney)).

In light of the broad protections of the FDCPA, *see Cohen*, 897 F.3d at 81; *Pipiles*, 886 F.2d at 27, and the established law that "sophisticated consumers" may bring FDCPA claims, *see*

---

[2] A recent search of the court's filings for appearances by Mr. Maximov returned a list of hundreds of FDCPA actions filed in this district.

9

*Jacobson*, 516 F.3d at 91, I find that it is appropriate to apply the least sophisticated consumer standard in this case, despite the plaintiff's familiarity and experience with the FDCPA.

## II. Consumer Standing

"The FDCPA does not grant standing to any individual who may happen to come across a debt collection letter." *Schwartz v. Resurgent Capital Servs., LP*, No. 08-CV-2533, 2009 WL 3756600, at *4 (E.D.N.Y. Nov. 9, 2009). Rather, to have standing to maintain a cause of action for a violation of the FDCPA, a plaintiff must: "(1) be a consumer; (2) stand in the shoes of the consumer; or (3) allege injurious exposure." *Kinkade v. Estate Info. Servs., LLC*, No. 11-CV-4787, 2012 WL 4511397, at *4 (E.D.N.Y. Sept. 28, 2012) (citing *Sibersky v. Goldstein*, 155 F. App'x 10, 11 (2d Cir. 2005)); *see also Grosz v. Cavalry Portfolio Servs., LLC*, No. 17-CV-3166, 2019 WL 4888583, at *3 (E.D.N.Y. Sept. 30, 2019) ("When resolving questions of standing, courts in this Circuit are guided by the Second Circuit's decision in *Sibersky*.").

The FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt," and "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a. "To determine whether a particular debt is commercial or personal in nature, courts examine the transaction as a whole, paying particular attention to the purpose for which the credit was extended." *Cohen v. Potenza*, No. 15-CV-3825, 2016 WL 6581233, at *8 (E.D.N.Y. Nov. 3, 2016) (citation and quotation marks omitted).

Citing the shipping address for the air conditioner—the law office where the plaintiff worked—the defendant claims that the alleged debt is really a "commercial" debt, and thus, the

10

plaintiff has no standing. (ECF No. 29-1 at 7-8.) The plaintiff responds that he "denies making the purchase in the first place," and that in any event the "billing address is not probative of anything." (ECF No. 32 at 16.) He also cites his declaration, in which he claimed that he owned two window air conditioners, and that the building in which he worked had central air conditioning and prohibited the use of window units. (ECF No. 34 at 6; Gendelberg Decl. ¶¶ 3, 17.)

The plaintiff in *Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*, 638 F. App'x 100, 103 (2d Cir. 2016) (summary order) pressed the same argument that the plaintiff makes—"that in the circumstance where a disputed debt never actually existed and collection efforts were targeted at an individual, the alleged non-existent debt should be deemed to arise from a personal transaction." The Second Circuit "reject[ed] this argument because it contradicts the plain language of the statute by attempting to define consumer debt in accordance with the actions of the debt collector, rather than the true nature of the debt." *Id.*

Nevertheless, in "examin[ing] the transaction as a whole, paying particular attention to the purpose for which the credit was extended," *see Cohen*, 2016 WL 6581233, at *8, I conclude that the record supports a finding that the alleged debt was a consumer debt. Aside from the shipping address, all evidence points toward the debt being a consumer debt. As the defendant explains, its own records show that the plaintiff bought the air conditioner using a Home Shopping Network card, not in a corporate name but in his own name. (Def. 56.1 ¶ 1.) In his declaration, although not in his deposition, the plaintiff claimed that he owns two other air conditioners—"an 8,000 BTU unit" and "a 12,000 BTU unit." (Gendelberg Decl. ¶ 3.)[3] Personal ownership of two air conditioners suggests that the transaction—concerning another air

---

[3] He does not say where he got these air conditioners.

11

conditioner—falls into the personal or household use category. In addition, the defendant submitted a list of the plaintiff's Home Shopping Network purchases, which includes the ENERGY STAR 15,100 BTU 115-VOL along with what appear to be other household items, including "shower gel." (ECF No. 29-13.) The defendant cites no legal authority for the proposition that shipping a purchase to a business address makes the debt from the purchase "commercial," and I decline to find that the shipping address dictates whether the plaintiff has standing to pursue his claims. Accordingly, I deny the defendant's motion on this ground.

### III. The Plaintiff's Claims

The plaintiff makes claims under sections 1692e, 1692e(2)(A), 1692e(5), 1692e(10) and 1692f of the FDCPA. (*See* ECF No. 1.) Section 1692e states, in relevant part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
> (2) The false representation of--
> (A) the character, amount, or legal status of any debt; . . .
> . . .
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
> . . .
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt any debt," and enumerates specific conduct that violates the provision.

#### a. Counts 1 and 2

In the first and second counts of his complaint, the plaintiff claims that the defendant violated sections 1692e, 1692e(2)(A) and 1692e(10) of the FDCPA by sending the plaintiff a letter that falsely represented that he owed a debt of $159.98 to HSNI, LLC. (ECF No. 1 at 4-6.) The defendant moves for summary judgment on these claims on the ground that the plaintiff

12

owed the debt, while the plaintiff moves for summary judgment on these claims on the ground that he did not owe the debt.

Because there is a genuine dispute of fact as to whether the plaintiff owed the debt, and therefore whether the April 11, 2018 letter included a false representation as to the debt, summary judgment is not appropriate on these claims on this ground. The defendant's records connect the plaintiff to the debt, and support its position that the plaintiff owed the debt. (Stoltenborg Aff. ¶¶ 4-6; ECF Nos. 29-6, 29-7, 29-12, 29-13.) The defendant's consumer fact sheet for the plaintiff lists a balance of $159.98 owed to creditor HSNi, LLC. (ECF No. 29-6.) A Statement of Account for the plaintiff lists a balance of $159.98 for an "ENERGY STAR 15,100 BTU 115-VOL" with a charge date of March 25, 2016, and lists HSNi, LLC as the creditor. (ECF No. 29-7.) Another account information sheet lists details of the purchase, including the price of the ENERGY STAR unit, the number of payments made and missed on the unit and the shipping address—the office of Maxim Maximov, LLP. (ECF No. 29-12.) A customer history document lists the plaintiff's Home Shopping Network purchases from the past ten years, and includes the ENERGY STAR 15,100 BTU 115-VOL with an order date of March 23, 2016. (ECF No. 29-13.)

There is some evidence, albeit scant, that supports the plaintiff's position. The plaintiff's claim in his declaration that he did not purchase the air conditioner is not enough to defeat summary judgment. (Gendelberg Decl. ¶ 3)[4]; *see Huebner v. Midland Credit Mgmt., Inc.*, No. 14-CV-6046, 2016 WL 3172789, at *6 (E.D.N.Y. June 6, 2016) ("A plaintiff's self-serving statements about the validity of his debt, without direct or circumstantial evidence to support

---

[4] At his deposition, the plaintiff claimed not to remember whether he had ever purchased an air conditioner from the Home Shopping Network. (Gendelberg Dep. 79:12-14.) In his declaration, however, his memory improved; he not only recalled that he did not purchase the unit at issue here, but that he bought two others.

13

them, cannot defeat a motion for summary judgment."), *aff'd*, 897 F.3d 42 (2d Cir. 2018); *Dowd v. City of New York*, No. 11-CV-9333, 2012 WL 5462666, at *1 (S.D.N.Y. Nov. 5, 2012) ("[S]elf-serving affidavits, sitting alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment."). But there is some additional evidence that tends to support his claim: while the debt verification letter states that the "basis" of the payment obligation is a contract, the defendant later admitted that there was no contract. Indeed, the defendant refunded the plaintiff's payment because it could not provide documentation to verify the debt. (ECF No. 29-6.) Of course, a plausible reading of this evidence is that the absence of documentation shows only that there was no contract, not that there was no debt obligation, and that the plaintiff not only got some of his money back, but kept the air conditioner as well. However, viewing the evidence in the light most favorable to the plaintiff, another plausible reading is that the inability to verify the debt shows that the debt was not in fact owed.

### b. Count 3

In the third count, the plaintiff claims that the defendant violated sections 1692e, 1692e(2)(A), 1692e(5), 1692e(10) and 1692f by "attempt[ing] to collect on a debt without having proper documentation on file to ensure that [he] owed any money at all" and "coerc[ing] [him] to settle his account by threat of legal action." (ECF No. 1 at 7.) The defendant moves for summary judgment on this claim because it is based on "untrue statements," while the plaintiff moves for summary judgment on the ground that the defendant could not substantiate its claim that the debt was actually owed.

The plaintiff does not address the defendant's argument that there is no evidence of any threat of legal action, and appears to have conceded this point. (*See* ECF No. 32 at 18.) In any

14

event, there is no evidence in the record that suggests that the defendant threatened the plaintiff with legal action.  Accordingly, this claim is dismissed to the extent it is based on such a threat.

As the defendant suggests, the plaintiff's claim that the defendant attempted to collected debt without proper documentation appears to overlap with his claims in the first two counts. (*See* ECF No. 33 at 9-10.)  However, as explained above, there is an issue of fact as to whether the plaintiff owed the debt based on the absence of records and communications.  Accordingly, while the allegations may very well be "simply untrue," I decline to dismiss this claim on this basis.

### c. Count 4

In the fourth count, the plaintiff claims that the defendant violated sections 1692e, 1692e(5), 1692e(10) and 1692f by threatening to "report the debt to the credit bureau" despite having no intention to do so, and threatening to take legal action.  (ECF No. 1 at 7-8.)

In its April 11, 2018 letter, the defendant wrote: "The obligation in the amount of $159.98 owed by you to the creditor, the above creditor, remains outstanding.  This debt may have been reported, or is scheduled to be reported, to one or more of the national credit reporting agencies: Equifax, TransUnion and/or Experian.  If your debt is reported to the credit bureaus, this could adversely affect your credit."  (ECF No. 1-1.)

The defendant claims that the April 11, 2018 letter "states that the debt may have been reported or may be scheduled to report to certain credit bureaus," not that the debt "will" be reported, and is therefore not misleading.  (ECF No. 29-1 at 11.)  Citing Rich Stoltenborg's deposition testimony, the plaintiff responds that the letter is misleading because the plaintiff

never reported the debt to any credit bureau. (ECF No. 32 at 19.)[5] The plaintiff also argues that the defendant's argument mischaracterizes the letter. (ECF No. 34 at 8.)

The statement that the debt "may have been reported" when it had not been reported is not, by itself, misleading. *See Dunbar v. Kohn L. Firm, S.C.*, 896 F.3d 762, 765 (7th Cir. 2018) ("An unsophisticated consumer would not understand the word 'may' to mean 'will.'"). The statement that the debt was scheduled to be reported is ambiguous, but read in context it is not threatening. *See Weinberg v. CKS Fin., LLC*, No. 19-CV-2666, 2020 WL 5369058, at *2 (E.D.N.Y. Sept. 8, 2020) ("[A] debt-collection letter should be read 'as a whole' to determine whether it is 'reasonably susceptible to misinterpretation or likely to cause a debtor to misunderstand his rights.'") (quoting *Shapiro v. Dun & Bradstreet Receivable Mgmt. Servs., Inc.*, 59 F. App'x 406, 409 (2d Cir. 2003) (summary order)).

There is an issue of fact, however, as to whether the statement that the debt was scheduled to be reported is misleading or false. If the defendant had no intention of ever reporting the debt, the statement that it was going to be reported could be misleading. *See Spitz v. Nationwide Credit, Inc.*, No. 19-CV-6722, 2020 WL 6565130, at *2 (E.D.N.Y. Nov. 9, 2020) ("A representation is 'deceptive' or 'misleading' under § 1692e if, from the perspective of the 'least sophisticated consumer,' the representation is 'open to more than one reasonable interpretation, at least one of which is inaccurate.'") (quoting *Easterling v. Collecto, Inc.*, 692 F.3d 229, 233 (2d Cir. 2012) (per curiam)). At his deposition, Rich Stoltenborg stated that the defendant did not report the plaintiff's account to the credit bureaus, and that he did not have knowledge of it being scheduled to be reported. (Stoltenborg Dep. 53:23-54:6.) But there is no evidence that shows that the defendant had no intention of scheduling the debt to be reported or

---

[5] Stoltenborg is the Compliance Manager at Hunter Warfield. (*See* ECF No. 32-6, Stoltenborg Deposition Transcript ("Stoltenborg Dep.") 4:21-24, 6:1-4.)

16

reporting it had it not been paid. *See Sebrow v. ER Sols., Inc.*, No. 07-CV-5016, 2009 WL 136026, at *3 (E.D.N.Y. Jan. 20, 2009) ("The court is persuaded by defendant's argument and finds that the language in question is not misleading or deceptive. Plaintiff's argument that defendant never intended to report his account to credit agencies is conclusory at best. He adduced no evidence demonstrating that defendant never intended to report the delinquent account."); *Ward v. Gold Key Credit, Inc.*, No. 18-CV-2834, 2019 WL 3628795, at *3 (E.D.N.Y. July 11, 2019) ("Courts in this district have consistently held that a debt collector can inform a consumer that it may report an unpaid account."), *report and recommendation adopted*, 2019 WL 3605781 (E.D.N.Y. Aug. 6, 2019). However, Stoltenborg's statement that—to his knowledge—the debt was not scheduled to be reported precludes dismissing this claim.

## IV. Bona Fide Error Defense

Under section 1692k(c), "[a] debt collector asserting the bona fide error defense must show by a preponderance of the evidence that its violation of the Act: (1) was not intentional; (2) was a bona fide error; and (3) occurred despite the maintenance of procedures reasonably adapted to avoid any such error." *Wagner v. Chiari & Ilecki, LLP*, 973 F.3d 154, 168 (2d Cir. 2020) (citation and quotation marks omitted). "While the bona fide error defense does not extend to intentional violations caused by mistakes of law, it does shield from liability unintentional violations resulting from qualifying factual errors." *Id.* (citation and quotation marks omitted).

The defendant claims that it is protected under this defense because it relied on representations that HSNI made to it about the debt. (ECF No. 29-1 at 12-13.)[6] It says that "HWI was provided information regarding the debt from HSNI at the time of the placement of

---

[6] The defendant does not claim that the bona fide error defense applies to Count 4 or provide any basis for its application to that claim.

17

the debt with HWI," and cites records that appear to have been generated by the defendant. (*See id.* (citing ECF Nos. 29-6, 29-12).) One record—the HSNI customer history detail document—appears to have been generated by HSNI. (ECF No. 29-13; *see* Stoltenborg Aff. ¶ 4 (describing the document as "HSNI Customer History").) The defendant does not otherwise explain in its briefs what information it received from HSNI. Although there is some evidence that supports the defendant's argument—the HSNI customer history detail document, and possibly other documents—I conclude that there is an issue of fact as to whether the defendant's reliance on information from HSNI makes out a bona fide error defense. *See Pettitt v. Chiari & Ilecki, LLP*, 419 F. Supp. 3d 627, 636 (W.D.N.Y. 2019) (concluding that "[r]easonable jurors could disagree as to whether Defendant's error was reasonable" where the defendant relied on "a communication from . . . the creditor," and distinguishing a case in which reliance was "objectively reasonable" because the defendant "relied on reports generated by its client" and "the client submitted an affidavit attesting to the accuracy of its reports").

## CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment is granted in part and denied in part, and the plaintiff's cross-motion is denied.

**SO ORDERED.**

                                                        s/Ann M. Donnelly
                                                    _____
                                                    ANN M. DONNELLY
                                                    United States District Judge

Dated: Brooklyn, New York
       March 31, 2021